**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| SUSAN SMITH, ) | |
| ) | CASE NO.     4:11-CV-0863 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
|   Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Susan Smith ("Smith") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Smith's claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is AFFIRMED.

**I. Procedural History**

On June 27, 2008, Smith filed an application for SSI alleging a disability onset date of February 6, 1972. Her application was denied both initially and upon reconsideration. Smith timely requested an administrative hearing.

On February 17, 2010, an Administrative Law Judge ("ALJ") held a hearing during which Smith, represented by counsel, testified. George J. Starosta testified as an impartial vocational expert ("VE"). On March 16, 2010, the ALJ found Smith was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

## II. Evidence

*Personal and Vocational Evidence*

Age thirty-eight at the time of her administrative hearing, Smith is a "younger person" under social security regulations. *See* 20 C.F.R. § 416.963(c). (Tr. 16.) Smith has a limited education and no past relevant work. *Id*.

*Hearing Testimony*

At the administrative hearing, Smith testified as follows:

- She is 5'5" and weighs 194 pounds. (Tr. 28.)

- She is divorced and lives with her boyfriend. (Tr. 29.)

- She does not have a driver's license because she cannot see well. *Id*.

- Her last grade completed was the tenth grade. *Id*.

- She had not worked for over ten years. Her last job was as a cashier, which required her to stand all day and lift up to ten pounds. She quit that job because it was overwhelming. (Tr. 29-30.) *Id*.

- She believes she is unable to work due to the loss of sight in her right eye and pain associated with the loss of that eye, as well as depression and anxiety. (Tr. 32.)

- She has problems with depth perception and bumps into things when walking/ (Tr. 32-33.)

- She sees a psychiatrist for her depression and anxiety and was prescribed medication. She cries often and avoids people. (Tr. 33.)

- On a typical day, she has coffee and does some chores. She never finishes her chores and experiences increased difficulty performing them. She cooks meals and cleans up afterwards, but it takes her longer than an average person. (Tr. 34.) She does the grocery shopping, but is driven to the store by her boyfriend. (Tr. 35.)

- She reads newspapers and watches television, but has difficulty focusing on those activities as well. (Tr. 35-36.)

- She does not have many friends, and only rarely visits with her neighbors. (Tr. 36.)

- She often has panic attacks and usually has six "trouble days" each week and only one good day. (Tr. 37.)

- Some days she feels like her counseling helps and other days she feels like it does not. She has not noticed any side effects from her medication. (Tr. 38.)

- She avoids people because she experiences extreme anxiety when she is around them. She feels that people do not like her. (Tr. 39.)

The ALJ posed the following hypothetical to the VE:

Now please assume an individual of the Claimant's age, education and work experience, and that such a person has no exertional limitations, she cannot perform work that requires depth perception or peripheral vision on the right side, she can never climb ladders, ropes or scaffolds, she must avoid all exposure to hazards such as heights and moving machinery, she is able to perform simple, routine, repetitive tasks. She requires low stress work, defined as occasional, simple decision-making, and occasional changes in the work setting. She can have occasional interaction with co-workers and no interaction with the public. I guess I will expand on that. Not only (INAUDIBLE) peripheral vision on the right side, but she has a limited field of vision on the right due to her blindness.

(Tr. 40.)

The VE testified that such a person could not perform Smith's previous work as a cashier at the light exertional level. (Tr. 40.) However, the VE identified the following jobs that the

3

hypothetical individual could perform: laundry folder (100,000 jobs nationally); assembler (200,000 jobs nationally); and, garment packer (50,000 jobs nationally).  (Tr. 41.)  If the hypothetical person was off task fifteen to twenty percent of the workday, such person would be unemployable.  *Id*.

### III.  Standard for Disability

A claimant may also be entitled to receive SSI benefits when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.  The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity."  Second, the claimant must suffer from a "severe impairment."  A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d).  Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled.  For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV.  Summary of Commissioner's Decision

The ALJ found Smith established medically determinable, severe impairments, due to

blindness in the right eye, the residual effects of a prosthesis in the right eye, depressive disorder, personality disorder, and alcohol abuse. (Tr. 12.) However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id*. Smith was determined to have a Residual Functional Capacity ("RFC") for a full range of work at all exertional levels with a number of non-exertional limitations. (Tr. 14.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Smith is not disabled.

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also

5

support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether the proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

## VI. Analysis

Smith's sole assignment of error asserts the ALJ erred by failing to properly evaluate the opinion of one of her treating physicians, Ronald Yendrick, D.O. (ECF No. 14 at 6-10.) Specifically, Smith asserts that the ALJ failed to set forth sufficient reasons for rejecting Dr. Yendrick's opinion of November 9, 2009.[1]

---

[1] On November 9, 2009, Dr. Yendrick completed a checklist questionnaire concerning Smith's RFC. (Tr. 410-12.) He opined Smith had marked impairment in her ability to accept instruction from or respond appropriately to criticism from supervisors or superiors, and a moderate impairment in her ability to perform in ten functional areas including her ability to work in coordination or proximity to others, relate to the general public, perform and complete work tasks in a normal work day or week at a consistent pace, carry through instructions and complete tasks independently, and behave predictably, reliably and in an emotionally stable

Under Social Security regulations, the opinion of a treating physician or psychiatrist is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006) (*quoting* 20 C.F.R. § 404.1527(d)(2)). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9). "If the ALJ declines to give a treating source's opinion controlling weight, he must then balance the following factors to determine what weight to give it: 'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.'" *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011) (*quoting Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *Meece*, 192 Fed. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.)

Nonetheless, the opinion of a treating physician or psychiatrist must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406 ("It is an error to give an opinion controlling weight simply because it is the

---

manner. *Id*. He further believed that Smith's condition would likely deteriorate if she was placed under stress, particularly that of a job, because she has "poor concentration/speed of job" and "trouble finishing jobs." *Id*.

opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.") (*quoting* SSR 96-2p). Moreover, the ALJ is not bound by conclusory statements of a treating source that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir.1984). According to 20 C.F.R. § 404.1527(e)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability. This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled. "A statement by a medical source that you are 'disabled' ... does not mean that we will determine that you are disabled." *Id*. It is the Commissioner who must make the final decision on the ultimate issue of disability. *Duncan*, 801 F.2d at 855; *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

    The ALJ addressed Dr. Yendrick's opinion as follows:

> The claimant's treating psychiatrist at Valley Counseling, Dr. [Yendrick], completed a Questionnaire as to the mental residual functional capacity and opined that the claimant had marked limitations in dealing with supervisors, moderate limitations with interacting with others, and moderate limitations dealing with customary pressures (Exh. 19F).
>
> In this instance, the opinion is provided by a treating physician, Dr. Yendrick, but care with him was limited to 3 or 4 visits (see testimony). Dr. Yendrick reported that the claimant's limitations are caused by her poor concentration and with speed of completing assignments. Further, Dr. Yendrick limits the claimant's residual functional capacity and notes that the claimant's condition is likely to deteriorate if she is placed under the stress of employment (Exh. 19F/4). The undersigned does not give significant weight to this opinion as it is inconsistent with the evidence as a whole, including other opinion evidence, the claimant's

8

>activities of daily living and Valley's own records. Furthermore, the claimant's limitations in responding appropriately to stress and changes in the work setting are accommodated by the above residual functional capacity that limits her to only low stress work.

(Tr. 15-16.)

The ALJ's analysis of Dr. Yendrick's opinion indicates that he found Smith's treatment records did not support the functional limitations ascribed to her. The ALJ's finding is the equivalent of a finding that Dr. Yendrick's opinion was inconsistent with the other substantial evidence, justifying why the opinion was not ascribed controlling weight. However, when an ALJ declines to give a treating source's opinion controlling weight, he should balance the following factors to determine what weight to give it: the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source. The ALJ did not discuss Dr. Yendrick's specialization, but did expressly note the limited length/frequency of the treatment relationship and the inconsistency of Dr. Yendrick's November 9, 2009, opinion with the record as a whole, including Smith's daily activities and other medical opinions. The Court finds that the ALJ's analysis and balancing of the aforementioned factors was neither unreasonable nor procedurally insufficient.

Furthermore, assuming for the sake of argument that the ALJ's decision did not sufficiently set forth the reasons for rejecting the opinions in Dr. Yendrick's RFC questionnaire, such deficiency is immaterial as Dr. Yendrick was not a treating physician when he rendered the opinion.[2] Dr. Yendrick completed the RFC questionnaire at Smith's second visit – on November

---

[2] Under the regulations, a "treating source" is defined as follows:

9

9, 2009. (Tr. 410-12.) Smith was first seen by Dr. Yendrick on October 9, 2009. (Tr. 420-21.) Factually, this case is similar to the Sixth Circuit's decision in *Daniels v. Comm'r of Soc. Sec.*, 152 Fed. App'x 485 (6th Cir. 2005). Therein, the Court found that a physician who only saw the claimant twice was not a treating physician despite the ALJ referring to the physician as a treating source. The *Daniels* court found as follows:

> Daniels next argues that Dr. Pinson's opinion was not afforded deference by the ALJ. *** The ALJ's opinion referred, in passing, to Dr. Pinson as a treating source or treating physician, thus adopting Daniels's own characterization of Dr. Pinson. *** We conclude that the treating source regulations and Wilson are not implicated by the facts of this case. The ALJ's failure to specifically address Dr. Pinson's opinion, despite casually referring to her as the treating source, is not surprising given that Dr. Pinson does not meet the criteria under the regulations to be defined as a treating physician. The regulations define a treating physician as a physician who has provided medical treatment or evaluation and "who has, or has had, an ongoing treatment relationship with" the claimant. 20 C.F.R. § 404.1502. The Commissioner will consider a claimant to have an ongoing treatment relationship when "the medical evidence establishes that [the claimant] see[s], or has seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)." *Id.* A physician who has treated a patient only a few times

---

Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (*e.g.*, twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s). We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a nontreating source.

20 C.F.R. § 416.902.

> may be considered a treating source if that frequency of visits is appropriate for the claimant's medical condition. *Id*. In this case, Dr. Pinson saw Daniels on two occasions, November 13, 2001, and November 16, 2001. Daniels, however, sought treatment for his back pain on many more occasions than these two visits, including six visits to the emergency room and several other visits to King's Daughters' Outreach Center. Daniels's two visits to Dr. Pinson within the span of a few days is not a frequency consistent with the treatment of back pain, as evidenced by the fact that he received treatment from other sources on many other occasions.

*Daniels*, 152 Fed. App'x at 489-91 (footnotes omitted); *accord Hakkarainen v. Astrue*, 2012 U.S. Dist. LEXIS 16431 (N.D. Ohio Jan. 19, 2012); *see also Taylor v. Astrue*, 245 Fed. Appx. 387, 391 (5th Cir. 2007) (two visits to doctor did not establish a treating relationship).

Two psychiatric visits only one month apart were insufficient to establish a treating relationship, as it is not a frequency consistent with the longitudinal nature of psychiatric treatment, as evidenced by the fact that Smith received treatment from other psychiatric sources on numerous occasions beginning no later than 2007 up until January of 2010. (Tr. 269-300, 359-83, 409-445.) Furthermore, Smith's subsequent visits to Dr. Yendrick after November 9, 2009, are irrelevant in determining whether the RFC questionnaire was that of a treating physician at the time it was completed. "The question is whether [the claimant] had the ongoing relationship with [the physician] to qualify as a treating physician *at the time he rendered his opinion*." *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 506 (6th Cir. 2006) (emphasis added). In *Kornecky*, the Sixth Circuit declined to find a treating physician relationship, noting that subsequent visits to a physician after the RFC assessment had been made "could not retroactively render [the doctor] a treating physician at the time of the assessment." 167 Fed. App'x at 506 n.10; *accord Thompson v. Astrue*, 2011 U.S. Dist. LEXIS 84542 (N.D. Ohio, Aug. 2, 2011).

Smith asserts that Dr. Yendrick was a colleague of her previous treating psychiatrist, Dr. Ariza at Valley Counseling, and was, therefore, able to pick up where Dr. Ariza left off. (ECF No. 14 at 10.) The Court is not persuaded by this argument for several reasons. First, Smith cites no law suggesting that a new physician or psychiatrist should be deemed a treating source merely because the patient was previously seen by a colleague. Second, examining sources and non-examining sources frequently have access to a claimant's past medical records, yet their opinions are not accorded the same deference as a treating source. Finally, the ALJ specifically found that Dr. Yendrick's opinion was not consistent with Smith's prior treatment records from Valley Counseling. (Tr. 15-16.)

Because Dr. Yendrick was not a treating physician or psychiatrist when he completed the RFC questionnaire on November 9, 2009, it is not entitled to the same deference as a treating source's opinion. While Dr. Yendrick's opinion still constitutes an acceptable medical source and is generally entitled to more weight than that of a non-examining source, the ALJ need not offer as much detail when rejecting such an opinion. 20 C.F.R. § 404.927(d)(1). The regulations only mandate that an ALJ "explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us." 20 C.F.R. § 416.927(f)(2)(ii). The Court finds that the ALJ explained the weight ascribed to Dr. Yendrick's opinion, essentially finding that it was inconsistent with the evidence as a whole, Smith's activities of daily living, Smith's counseling records, and the opinion of consultative examiner Margaret A.. Bancroft, Ph. D., who found only mild limitations. (Tr. 15-16.) As the ALJ's explanation is sufficient under the

12

regulations, Smith's assignment of error is not well taken.

## VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence.  Accordingly, the decision of the Commissioner is AFFIRMED and judgment is entered in favor of the defendant.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: March 20, 2012.